IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY | : : : | |
| v. | : | Civil No. CCB-13-1941 |
| | : : | |
| KBE BUILDING CORPORATION | : : | |

## MEMORANDUM

Plaintiff American Home Assurance Company ("American Home") filed this action against KBE Building Corporation ("KBE") seeking a declaratory judgment that the insurance policies it issued to KBE do not require American Home to indemnify KBE for costs incurred in remediating allegedly defective work at two worksites at which KBE was the general contractor or for amounts KBE has paid pursuant to settlement agreements with the owners of those worksites. (Compl., ECF No. 2, at 6-7.) KBE filed a counterclaim against American Home seeking a declaratory judgment that the insurance policies do cover the claims, as well as damages under several contract, quasi-contract, and tort theories. (Countercompl., ECF No. 7.) American Home's motion to dismiss Counts IV-VII of KBE's counterclaim is now pending before the court. The parties have fully briefed the issues, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motion will be denied as to Counts IV and V, and denied without prejudice as to Counts VI and VII.

## BACKGROUND

KBE is a commercial construction firm. (Countercompl. ¶ 5.) In 2006 and 2007, it purchased Commercial General Liability policies (collectively "the Policy") from American

1

Home.  (*Id.* ¶¶ 6-7; *see also* 2006 Policy, ECF No. 30-1; 2007 Policy, ECF No. 30-2.)  The Policy covered KBE for liability it may incur for bodily injury or property damage related to its construction projects.  (Countercompl. ¶ 8; 2006 Policy at 4, 9; 2007 Policy at 6, 16.)

In 2006 and 2007, it entered into contracts with Waldorf Land L.L.L.P. ("Waldorf Land") and Gainesville Land L.L.L.P. ("Gainesville Land") to construct "EZ Storage" buildings in Waldorf, Maryland ("the Waldorf Project") and Prince William County, Virginia ("the Gainesville Project").  (*Id.* ¶¶ 13, 23.)  KBE oversaw and managed the projects as a general contractor.  (*Id.* ¶¶ 14, 24.)  In April 2009, Waldorf Land filed claims against KBE seeking damages for allegedly defective work on the Waldorf Project.  (*Id.* ¶¶ 17-21.)  In October 2009, Gainesville Land did the same with respect to the Gainesville Project.  (*Id.* ¶¶ 27-31.)

In May and June of 2009, KBE filed claims with American Home for coverage under the Policy to address the litigation.  (*Id.* ¶¶ 22, 32.)  KBE alleges that, although it gave American Home timely notice, American Home and its claims representative, George McIntosh, failed to communicate with KBE about the cases or promptly to arrange for KBE's defense.  (*Id.*)  Having received no word from American Home, KBE claims it was forced to retain engineering firms, evaluate the structural conditions of the two projects, and prepare estimates of remediation in an attempt to mitigate possible damages.  (*Id.* ¶ 33.)

KBE claims that in November 2009, it entered into an agreement with American Home, through a new claims representative assigned to its case, Lane Goos, to address the litigation related to the Waldorf and Gainesville Projects.  (*Id.* ¶ 35.)  According to KBE, American Home agreed to "immediately initiate and reimburse KBE for the investigation, remediation, and repair efforts of the Waldorf and Gainesville facilities."  (*Id.* ¶ 36(a).)  In exchange, KBE was to

2

provide American Home with updates as to the cost of its remediation efforts and American Home was allowed to participate in decisions related to remediation. (*Id.* ¶¶ 36(d), 37.) In addition, KBE alleges that the two parties agreed a stay was to be implemented in both cases to allow KBE to perform repairs, which KBE claims would save American Home litigation costs. (*Id.* ¶ 36(b).) Further, KBE claims that, under the agreement, it was to file third-party tenders and claims for indemnity and insurance coverage from the subcontractors that had originally worked on the projects. (*Id.* ¶ 36(c).) According to KBE, in reliance on the November 2009 agreement, it "promptly committed to the project owners and proceeded with repairs of the Waldorf Project and Gainesville Project and began incurring substantial costs to do so." (*Id.* ¶ 38.)

In January 2010, American Home, through claims representative Lane Goos, sent KBE two "reservation of rights" letters advising of American Home's position with regard to insurance coverage. The letters informed KBE that American Home intended to investigate and provide a defense in both the Waldorf Project and Gainesville Project litigation, but it also reserved American Home's right to make indemnification payments as it noted the allegations in the underlying lawsuits "may not meet the policy insuring agreement definitions of an occurrence or property damage." (*Id.* ¶ 39; Mot. to Dismiss Ex. A., ECF No. 21-2, at 2-3, 5-6.)

On the basis of the alleged agreement reached in November 2009, KBE began, in early 2010, to send American Home regular updates regarding the remediation of both the Waldorf and Gainesville Projects. (*See, e.g.*, Countercompl. ¶¶ 40-41.) It submitted reimbursement requests for its remediation work on the Waldorf Project in March, April, June, and October 2010, January and October 2011, and January 2012. (*Id.* ¶¶ 42, 44, 50, 54, 57, 60-61.) It

3

submitted reimbursement requests for its remediation work on the Gainesville Project in June and November 2010, January and October 2011, and March 2012. (*Id.* ¶¶ 70, 72, 74-77.)

In April 2010, a new claims representative, Mike Bird, was assigned to handle both claims. (*Id.* ¶¶ 43, 65.) According to KBE, it had to "educate" Mr. Bird about the November 2009 agreement, and he often requested information from KBE that it had previously submitted to the former representative, Lane Goos. (*Id.*) KBE also sought guidance from Mr. Bird on the repairs. (*Id.*) On June 1, 2010, American Home sent additional "reservation of rights" letters to KBE acknowledging receipt of a reimbursement request for work on the Waldorf Project, reserving its rights to determine if the claims were covered by the Policy, and requesting additional information, which KBE believed it had already provided. (*Id.* ¶¶ 47-49, 67-68.)

Beginning in July 2010, American Home responded to some of KBE's reimbursement requests, approving some reimbursements but refusing most because American Home found the claims related to fixing defective work were not covered by the Policy. (*See, e.g.*, *id.* ¶¶ 52, 73.) American Home never responded to other requests for reimbursement. (*Id.* ¶¶ 60-61, 74-77.) In June 2013, well over three years after KBE's first request and well over a year after its last, American Home paid all of what it believed KBE was due under the Policy—$33,298.56 for the Waldorf Project and $1,463.65 for the Gainesville Project. (*Id.* ¶¶ 63, 79.) KBE had submitted total requests of $1,435,787.16 for the Waldorf Project and $1,422,596.06 for the Gainesville Project. (*Id.* ¶¶ 62, 78.) KBE claims it has incurred $2,858,383.22 in remediation expenses. (*Id.* ¶ 80.) Eventually, KBE settled both cases without American Home's participation because it allegedly refused to participate in settlement discussion. (*Id.* ¶ 84.)

KBE alleges American Home failed to provide its coverage position in a timely manner

4

and failed to investigate, analyze, and adjust KBE's claim in a diligent and good faith manner, despite having the necessary information from KBE to do so, causing KBE "significant loss and prejudice." (*Id.* ¶¶ 81, 85, 87.) In addition, KBE claims it incurred the expense of repairs with the understanding—from both the November 2009 agreement and American Home's participation in planning and pursuing the remediation efforts—that American Home had agreed to and would reimburse it. (*Id.* ¶¶ 38, 82-83.) Finally, it claims American Home "has taken its benefits from the [November 2009] Agreement (e.g. cost/damage mitigation, lower construction costs, and lower litigation costs) and has deprived KBE of its benefits from the [November 2009] Agreement (cost reimbursement)." (*Id.* ¶ 86.)

In its counterclaim, KBE seeks a declaration (Count I) that American Home is liable, under the Policy, for all damages KBE has incurred in resolving the Waldorf Project and Gainesville Project disputes. It also seeks damages for breach of contract—of both the Policy (Count II) and the November 2009 agreement (Count III)—for breach of the implied covenant of good faith and fair dealing (Count VI), and negligence (Count VII), as well as damages under theories of promissory estoppel (Count IV) and *quantum meruit* (Count V). American Home moves to dismiss Counts IV-VII for failure to state a claim.

## ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being

5

made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## I. Counts IV and V – Promissory Estoppel and *Quantum Meruit*

American Home claims KBE has failed to state a claim because neither Maryland, Virginia, nor Connecticut law[1] allows recovery under a quasi-contractual theory where an existing contract fully governs the subject matter.[2] (Mem., ECF No. 21-1, at 8-9, 11; Reply,

---

[1] The parties dispute whether Maryland, Connecticut, or Virginia law governs KBE's promissory estoppel and *quantum meruit* claims. (*See* Mem., ECF No. 21-1, at 8-9, 11 (applying Maryland law to both claims); Opp'n, ECF No. 29, at 5-8 (arguing Connecticut law applies to both claims); Reply, ECF No. 30, at 9 (applying Maryland and Virginia law to KBE's *quantum meruit* claim).) Because which state's law governs does not affect the court's decision, the court does not need to conduct a choice of law analysis. *See Perini/Tompkins Joint Venture*, 738 F.3d 95, 101 (4th Cir. 2013).

[2] American Home does not appear to dispute that KBE has pled sufficient facts to demonstrate all the elements of a promissory estoppel and *quantum meruit* claim under either Connecticut, Maryland, or, in the case of the *quantum meruit* claim, Virginia law.

ECF No. 30, at 5-6, 9.) It is true that KBE could not recover, under Maryland, Virginia, or Connecticut law, on quasi-contractual grounds if there is an express contract governing the claim. *300 State, LLC v. Hanafin*, 59 A.3d 287, 291 (Conn. App. Ct. 2013) (noting that "a party 'cannot be held liable simultaneously for breach of an express contract and an implied in law contract governing the same subject matter'" (citation omitted)); *Mongold v. Woods*, 677 S.E.2d 288, 292 (Va. 2009) (noting that a court will not imply a contract between parties where there is an enforceable express contract covering the same subject matter); *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 772 n.9 (Md. 2004) (noting that "the general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests" (internal quotation marks and citation omitted)). Where the terms of a contract are in dispute, however, parties can make alternative pleadings with both contractual and quasi-contractual theories. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 343-44 (D. Md. 2012) (refusing to dismiss a claim for promissory estoppel where the existence of a valid contract governing the same subject matter was in dispute); *RaceRedi Motorsports, LLC v. Dart Machinery, Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009) (refusing to dismiss a claim of unjust enrichment where the terms and extent of the contract remained in dispute). That is what KBE has done here.

In addition to the two insurance contracts, KBE claims it and American Home entered into a contract in November 2009 under which KBE is entitled to payment for its remediation efforts. (Countercompl. ¶¶ 35-36.) American Home disputes the existence of the November 2009 contract and disputes that the insurance policies cover the reimbursements KBE seeks.

(Mem. at 5-6, 10.) If no valid contract was formed or the existing insurance policies do not cover the work for which KBE seeks reimbursement, KBE may still be able to recover on a quasi-contractual theory. It is thus not appropriate to dismiss KBE's quasi-contractual claims simply because KBE also pleads contractual claims. *See Swedish Civil Aviation Admin. V. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) (noting that "quasi-contract claims are appropriate unless it is proven that that there is an express contract"). American Home's motion to dismiss is denied, therefore, with respect to Counts IV and V.

## II. Counts VI and VII – Breach of the Covenant of Good Faith and Fair Dealing and Negligence

The parties dispute whether Connecticut, Maryland, or Virginia law governs KBE's good faith and negligence claims. Maryland and Virginia do not recognize a separate tort cause of action for a breach of the covenant of good faith and fair dealing implied in a contract. *A&E Supply Co., Inc. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 677 (4th Cir. 1986) ("We believe that the [Virginia] Supreme court would reach the . . . conclusion that an insured does not state a tort claim by charging that an insurer was actuated by bad faith in breaching the contract of insurance."); *Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 793-94 (finding that, under Maryland law, the duty of good faith and fair dealing "is merely part of an action for breach of contract"); *Magnetti v. University of Maryland*, 909 A.2d 1101, 1105 n.3 (Md. App. 2006) ("Maryland does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing."); *Harris v. USAA Cas. Ins. Co.*, 37 Va. Cir. 553, at *11 (Va. Cir. Ct. 1994) ("[T]here is no tort cause of action for bad faith in Virginia."). KBE thus fails to state a claim under either state's law. Connecticut, on the other hand, does recognize a separate tort action. *See Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 67 A.3d 961, 986-87 (Conn. 2013).

Similarly, it appears there may be differences between the states' laws in deciding whether KBE has stated a claim for negligence. *Compare Factory Mut Ins. Co. v. Pike Co., Inc.*, 2009 WL 1939799, at *2 (D. Conn. 2009) (applying Connecticut law and finding a tort claim for negligence can arise from a duty imposed by contract), *with Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1107 (D. Md. 1999) (noting that, under Maryland law, a contractual obligation does not create a tort duty and that a duty in tort must arise from some independent basis).

Because the outcome likely differs depending on which state's law controls, the court must conduct a choice of law analysis before deciding if KBE has stated a claim. Under Maryland's choice of law rules, however, this analysis is complicated and fact-intensive, and therefore better resolved, if necessary, on the full factual record at the close of discovery. *See Fidelity & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, 2014 WL 346630, at *4 (D. Md. 2014) (noting the choice of law questions may be properly deferred until after the parties have engaged in discovery and citing cases). Assuming Connecticut law does apply, the court is inclined to find that KBE has stated a claim under both counts. Given that the question is close, however, the choice of law is unclear, and the case is proceeding in any event, the court will deny American Home's motion to dismiss as to Counts VI and VII without prejudice.

## CONCLUSION

For the reasons stated above, American Home's motion to dismiss will be denied. A separate order follows.

March 14, 2014             /s/
Date             Catherine C. Blake
            United States District Judge